IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SCOTT PETERS, M52851, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CLINT TANNER, | ) | |
| VanPelt, | ) | |
| DR. GOLDMAN, | ) | Case No. 20-cv-689-DWD |
| DR. CHENG, | ) | |
| DR. JAMES, | ) | |
| MORGAN WALKER[1], | ) | |
| HUEY, | ) | |
| HILLERMAN, | ) | |
| MD. MIRZA BAIG, | ) | |
| JACQUELINE LASHBROOK, | ) | |
| FRANK LAWRENCE, | ) | |
| IDOC, | ) | |
| JOHN BALDWIN, | ) | |
| WEXFORD HEALTH SOURCE, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

This matter is before the Court for consideration of Plaintiff Scott Peters' second amended complaint (Doc. 96), the Defendants' Motion to Strike (Doc. 97), and Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 101). The underlying lawsuit concerns Plaintiff's allegation that beginning in July of 2018, and continuing through at least November 2018, on multiple occasions, the defendants abruptly stopped

---

[1] Morgan Walker is referred to interchangeably by the parties as Morgan Walker and Morgan Walker-Nesmith. The Court assumes that this is the same person, so it will not direct the Clerk to correct the name, nor did it construe additional claims against this party or direct new service of process.

medications that he needed and failed to follow a medically appropriate taper-down process to minimize or reduce withdrawal symptoms.   As with any complaint filed by an inmate, Plaintiff's amended complaint is subject to review under the terms of 28 U.S.C. § 1915A.

Upon initial review the Court identified one distinct claim that would proceed:

**Claim 1:** **Eighth Amendment claim against James, Cheng, Walker, Tanner, and Van Pelt for deliberate indifference to serious medical needs.**

(Doc. 15 at 3).  The Court dismissed claims against the Illinois Department of Corrections (IDOC), Rauner, Baldwin, Lashbrook, Lawrence, Wexford Health Source, Dr. Poteat, Dr. Goldman, Weatherford and Wilson for failure to state a claim.

Plaintiff has now filed an amended complaint that reincorporates Lashbrook, Lawrence, IDOC, Baldwin, Wexford and Dr. Goldman.  It also adds claims against Dr. Mirza Baig, MHP Huey and MHP Hillerman.  Based on the amended complaint, the Court will designate the following claims:

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Dr. Baig, Huey, and Hillerman;**

(Amended Complaint).

**Allegations**

The allegations of the second amended complaint are strikingly similar to the first. They are repeated here for clarity, but the Court did not interpret the second amended complaint to add any additional claims against existing defendants.

2

Plaintiff alleges that prior to his incarceration, he sustained injuries that ultimately resulted in a finding of one hundred percent disability by the Department of Veterans Affairs. (Doc. 96 at 9). He was prescribed medications for pain, arthritis, and psychiatric issues. He entered the IDOC at Stateville Correctional Center, and in March of 2016 he was transferred to Menard. (*Id.* at 9-10). At Menard his medications were initially terminated. (*Id.* at 10). In June of 2016 a non-party doctor reinstated his medications. In December of 2017, that doctor resigned. Plaintiff alleges that Defendant "Baig, Mirza is alleged to subsequently follow, although "Peters" had never seen him, until recent discovery documents showed this, was unaware." (Doc. 96 at 10).

Around July 22, 2018, Defendant Dr. James discontinued Plaintiff's benzodiazepine and klonopin against normal standard medical procedures. On July 22, 2018, Plaintiff alleges that Defendant Van Pelt denied him medical and psychiatric help for his symptoms of withdrawal. He added that Defendant Huey also saw him and refused to treat his withdrawal, though he does not give a date for this encounter. From July 22, 2018, through August 12, 2018, he told officers and mental health staff about the medical and mental health ailments he was suffering because of withdrawal—including pain, chest pain, gastrointestinal distress, muscle tightness and aches, difficulty breathing, profuse sweating, blurry vision, light sensitivity, anxiety, panic attacks, excited delirium, increased aggression, stress, hallucinations, shaking, sleep apnea, detachment, and agitation. (Doc. 96 at 11).

Plaintiff alleges that Dr. Goldman reviewed his medical and mental health history, and he knew that IDOC's "policy and practice of direct discontinuation of the mental

3

health drug klonopin would cause harm." (Doc. 96 at 11). In early August 2018, Dr. Cheng refused to restart Plaintiff's medications. Around August 12, 2018, Plaintiff's medications were restarted at less than half the original potency, contrary to medical practices. On September 6, 2018, Plaintiff saw Dr. Cheng for the last time. He alleges that Cheng's medical reasoning and taper-down process was not consistent with medical norms or with Goldman and IDOC's policy of a direct discontinuation of medication.

Plaintiff alleges that from March 2016 through November 27, 2018, he saw Dr. Goldman oversee the psychiatric administration for mental health care in the IDOC. Plaintiff alleges Goldman oversaw the care he got and approved failed policies, which led to his discharge in 2020. (Doc. 96 at 11-12).

Plaintiff alleges that the medical care was a 'revolving door,' and he lists many participants including named defendants. He alleges that Baig wrote his prescription because it was an "unknown physician." From March 2016 to present, Plaintiff claims that Baldwin, Lashbrook, Lawrence and Wexford oversaw Menard, and they knew or should have known of the discontinuation of his medication. He alleges the interruptions in his medication were cruel and unusual punishment and Baldwin and Lashbrook should have intervened because they knew about the situation from his personal correspondence but turned a blind eye. (Doc. 96 at 12).

Plaintiff breaks his complaint into distinct counts. In Count 1, he alleges Baldwin knew or should have known of his suffering from grievances and failed to intervene. (Doc. 96 at 3). He alleges the same as to Lashbrook and Lawrence in Count 2. Plaintiff alleges in Count 3 that Wexford and its employees knew or should have known that the

policy of stopping his medication would cause suffering.  In Count 4, he alleges that Drs. Cheng, James, Walker, Tanner, and Baig violated his rights by following the policy to discontinue his medications, which they either knew or should have known would cause him harm.  Plaintiff adds that Dr. Goldman also failed in his official capacity to provide adequate care.  In Count 5, Plaintiff alleges that mental health professionals Huey, Van Pelt, and Hillerman violated his rights by the discontinuation of his medication, which they knew or should have know would cause him harm.  Plaintiff seeks a declaration that these actions were wrong, and compensatory damages.

## Preliminary Dismissals

The Court previously found that Plaintiff had failed to state a claim against Defendants Baldwin, Lashbrook, Lawrence, IDOC, Wexford, and Goldman.  To alter this finding, Plaintiff needed to present allegations that differentiated his new claims from the claims in the original complaint.  Plaintiff has failed to provide sufficient new allegations.

The claims against Baldwin are still impermissible under the Eleventh Amendment.  (Doc. 15 at 4).  As to the claims against Lashbrook and Lawrence, Plaintiff adds to his amended complaint that these two supervisors turned a blind eye to his serious medical/mental health needs.  In support, he cites to exhibits with Bates numbers 364, 372.  Although he provided exhibits, some of which had Bates numbers, none of the exhibits that he submitted have Bates numbers 364 or 372.  The most potentially relevant exhibit is a grievance that he submitted on July 25, 2018, alleging that his medication had been stopped for about a week.  Lashbrook deemed the grievance a non-emergency on August 1, 2018, and later counselor notes show that he was seen by healthcare providers.

(Doc. 96 at 42, Peters #3-IDOC 241).  The Court does not find this document, or the other exhibits that were referenced but not included, sufficient to state a claim against Lashbrook or Lawrence for their role as supervisors of the facility.   In some circumstances, a Plaintiff can plead a deliberate indifference claim against a supervisor, but to do so, he must show that the supervisor had actual knowledge of the injury and he or she condoned the situation or turned a blind eye.  *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015).  The Seventh Circuit has found such a claim adequately pled where administrators received many letters or received multiple highly detailed grievances and other correspondence.  Plaintiff's assertions do not rise to this level.  He has presented a bare legal allegation, that these defendants turned a blind eye, with little to no factual support, even after the benefit of some discovery on the exhaustion of administrative remedies.  He asserts that the two knew about his situation either from grievances or from personal communication, but he does not detail when he corresponded with them, how often, or what the contents of his personal communications were.  Accordingly, the Court finds that his allegations against Lashbrook and Lawrence are still insufficient.

Turning to Dr. Goldman, in the original complaint, Plaintiff alleged that Goldman oversaw the psychiatric care provided by IDOC from March 11, 2016, through November 27, 2018, and that he approved and supported failed policies.  (Doc. 11 at 10).  Plaintiff repeated the same allegation in his second amended complaint but added that Goldman had reviewed his "medical mental health record knowingly the result of IDOC's policy and practices of direct discontinuation of the mental health drug klonopin would cause harm, knew or should have known this and refused to intervene."  (Doc. 96 at 11).  This

allegation is an attempt to illustrate Goldman's personal involvement, but it is unsuccessful. The allegation does not expand Goldman's role from that of a supervisor, to a member of the care team responsible for day-to-day decisions about Plaintiff's care. Accordingly, Plaintiff has still failed to state a sufficient claim against Goldman, and this defendant will be dismissed.

As for Wexford, Plaintiff attempts to state a claim against Wexford by repeatedly insisting that Wexford had a policy of discontinuing klonopin which caused him harm, but this assertion comes out of the blue and is unsupported by anything. The mere fact that Plaintiff's medication was discontinued does not illustrate a policy, nor does it tie Plaintiff's experience to anything greater than a one-off incident. *See Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 796 (7th Cir. 2014) (isolated incidents do not add up to a pattern of behavior that would support an inference of a policy or custom). Without any support beyond the bare assertion that Wexford had a policy, this claim is insufficient to proceed.

## Analysis

The Court is left with the claims added against Dr. Baig, and mental health professionals Huey and Hillerman. Starting with Dr. Baig, Plaintiff alleges that he only learned of Baig's identity during discovery. This certainly explains the late addition of Baig to the lawsuit, but Plaintiff's factual allegations against Baig are insufficient. Plaintiff alleges that Baig was a successor to an earlier doctor who handled his medications. Plaintiff adds that he did not previously include Baig, because "Plaintiff had never seen him." If Plaintiff was never treated by Baig, he has no basis to say Baig was deliberately

7

indifferent to his medical and mental health needs.  At one point in the complaint, he alleges that there was a revolving door of care providers, and he suggests that Baig wrote his prescription.  If that were true, it is unclear why Baig would have been deliberately indifferent for a lack of medication.  In his enumerated Count 4, he lumps Baig in with the other doctors in this lawsuit, and generically alleges Baig was deliberately indifferent to his needs.  These allegations are insufficient, so any claim against Baig will be dismissed without prejudice.

Turning to Huey and Hillerman, the factual allegations are also scant.  In the original complaint, Plaintiff alleged that on July 30, 2018, he saw mental health professional Van Pelt, who refused to treat him for his symptoms of withdrawal.  This claim was allowed to proceed as a part of Claim 1 during the initial review of this case.  In the amended complaint, he adds to the exact same paragraph that on an unspecified date he saw Huey and Huey also denied him services.  He also mentions Huey and Hillerman in a paragraph where he simply alleges that there was a revolving door of care providers.  Although it is a close call, the Court will allow the claim against Huey to proceed because the allegation is virtually the same as the one that proceeded against Van Pelt.  By contrast, the claim will not be allowed to proceed against Hillerman because there are insufficient allegations of personal involvement by Hillerman.

### Motion to Strike

The Defendants' moved to strike Plaintiff's Second Amended Complaint because it was filed one day later than the deadline set by the initial scheduling order.  While it was docketed one day later, Plaintiff signed and dated his complaint on April 27, 2022,

the date it was due.  Under the prison mailbox rule, Plaintiff's amended complaint was timely per the initial scheduling order.  *See Taylor v. Brown*, 787 F.3d 851, 858-59 (7th Cir. 2015) (the prison mailbox rule applies to District Court filings, and it treats a pleading as mailed or e-filed on the date the inmate tendered it to prison staff for filing, which is usually the same as the date the pleading was signed).  Defendants also argue that the amended pleading lacked a motion for leave to file it, and it does not comply with local rules.  Although the Defendants are correct about these technicalities, the Court found it appropriate to review Plaintiff's amended pleading despite these shortcomings because he is a pro se litigant who is entitled to a certain degree of deference.  Accordingly, the Motion to Strike [97] will be **DENIED**.

## Disposition

Plaintiff's Motion to File an Amended Complaint [101] is **GRANTED** as to his Second Amended Complaint [96].  The Defendants' Motion to Strike [97] is **DENIED.**

Based on the analysis above, Claim 2 will proceed against Defendant Huey and the Clerk of Court is **DIRECTED** to serve Huey consistent with Document 15.

By contrast, Claim 2 will be **DISMISSED** for failure to state a claim as to Defendants Hillerman and Dr. Baig.  The Clerk is **DIRECTED** to **TERMINATE** Defendants Hillerman and Dr. Baig because Plaintiff has failed to state a claim against them.  Additionally, the Clerk of Court is **DIRECTED** to **TERMINATE** Defendants IDOC, Lashbrook, Lawrence, Baldwin, Wexford Health Sources, Inc., and Dr. Goldman, because as the Court previously found, Plaintiff as failed to state a claim against these parties.

**IT IS SO ORDERED.**

Dated: June 30, 2022

_____
DAVID W. DUGAN
United States District Judge