## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT PETERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:20-cv-689-DWD |
| CLINT TANNER, MEGAN VANPELT, | ) |
| VIRGINIA CHENG, TRAVIS JAMES, | ) |
| MORGAN WALKER, SHELBY HUEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court is Defendants' Motion for Summary Judgment. (Docs. 187 & 188). Plaintiff, who is represented by counsel assigned by the Court, filed a Response in Opposition to that Motion for Summary Judgment. (Doc. 189). Defendants then filed a Reply in Support of their Motion for Summary Judgment. (Doc. 190). For the reasons explained below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND

Following a review of Plaintiff's Amended Complaint, the Court found the following claim could proceed against Defendants James, Cheng, Walker, Tanner, and VanPelt under 42 U.S.C. § 1983: an Eighth Amendment claim for deliberate indifference toward Plaintiff's serious medical needs. (Docs. 11; 15, pg. 3). Thereafter, Plaintiff filed a Second Amended Complaint against various Defendants. Ultimately, the Court added Defendant Huey, among others, to the Eighth Amendment claim. (Doc. 103, pg. 2). That claim persists against Defendants James, Cheng, Walker, Tanner, VanPelt, and Huey.

Plaintiff, who was an inmate at Menard Correctional Center, allegedly suffers from serious physical and psychological issues that resulted in a finding of one hundred percent disability by the Department of Veterans Affairs. (Docs. 11 & 96). He was previously treated with benzodiazepines for his pain, arthritis, and psychological issues. (Docs. 11 & 96). However, beginning in July 2018, and continuing through at least November 2018, Defendants allegedly stopped providing his medication and failed to follow a taper-down process to minimize or reduce his withdrawals. (Docs. 11 & 96).

More specifically, on approximately July 22, 2018, Defendant James allegedly allowed the discontinuance of Plaintiff's prescription for Klonopin without an acceptable weening period. (Docs. 11 & 96). Defendant Cheng allegedly refused to restart that prescription at a full dosage. (Docs. 11 & 96). On August 3, 2018, however, Defendant Cheng renewed the prescription at half the original dosage, which was allegedly contrary to medical practices. (Docs. 11 & 96). Defendants VanPelt and Huey, who are mental health professionals, allegedly refused to treat his withdrawal symptoms. (Docs. 11 & 96).

On October 25, 2018, Plaintiff saw Defendant Walker who allegedly "immediately began to deny him his effective medication anew." (Doc. 11). Thereafter, on November 27, 2018, "Plaintiff would…see Dr. Tanner who continued the denial of his effective medication, starting the process anew." (Doc. 11). As a result of the denials of medication, Plaintiff allegedly experienced general pain, chest pain, gastrointestinal distress, muscle tightness and aches, difficulty breathing, profuse sweating, blurry vision, light sensitivity, anxiety, panic attacks, excited delirium, increased aggression, stress, hallucinations, shaking, sleep apnea, detachment, and agitation. (Docs. 11 & 96).

## II. ANALYSIS

Defendants move for summary judgment on Plaintiff's Eighth Amendment claim for deliberate indifference. The Court will grant that relief if Defendants show there is no genuine dispute as to any material fact, such that they are entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *accord Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579 (7th Cir. 2019) (quoting *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015); citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Assertions that a fact cannot be or is genuinely disputed must be supported by citations to the record. Fed. R. Civ. P. 56(c)(1)(A). Alternatively, the assertions must be supported by a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

If Defendants present evidence to show the absence of a genuine dispute of material fact, then the burden shifts to Plaintiff to provide evidence of specific facts that create a genuine dispute of material fact. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citing *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995)). A genuine dispute of material fact exists if there is sufficient evidence for Plaintiff to receive a verdict. *Driveline Sys.*, 936 F.3d at 579 (quoting *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018), *reh'g denied* (Oct. 30, 2018)). Speculation that is unsupported by the evidence cannot defeat summary judgment. *Moje v. Fed. Hockey League, LLC*, 377 F. Supp. 3d 907, 920 (N.D. Ill. 2019) (citing *Sbika v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018); *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)).

3

When considering a motion for summary judgment, the Court will not determine credibility, weigh the evidence, or decide which inferences to draw from the facts, as those tasks are reserved for the finder of fact. *Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (quoting *Johnson v. Advoc. Health & Hosp. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018)). Instead, based on the evidence, the Court will decide whether a genuine dispute of material fact requires a trial. *Id.* (quoting *Johnson*, 892 F.3d at 893). When doing so, the Court construes the evidence in a light most favorable to Plaintiff while also avoiding the temptation of deciding one side's version of the facts is more likely true than the other side's version of the facts. *Id.* (quoting *Johnson*, 892 F.3d at 893).

As a substantive matter, it is well settled that prison medical professionals violate the Eighth Amendment's prohibition on cruel and unusual punishment when their conduct shows a deliberate indifference toward serious medical needs. *Jones v. Mathews*, 2 F.4th 607, 612 (7th Cir. 2021) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997)); *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The plaintiff must prove (1) an objectively serious medical condition, and (2) deliberate indifference toward the inmate's health or safety. *Jones*, 2 F.4th at 612 (citing *Orlowski v. Milwaukee Cnty.*, 872 F.3d 417, 423 (7th Cir. 2017)); *accord Eagan v. Dempsey*, 987 F.3d 667, 693-95 (7th Cir. 2021); *Campbell v. Kallas*, 936 F.3d 536, 544-45 (7th Cir. 2019); *Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019). When reviewing this claim, the Court considers the totality of the inmate's medical care. *Lisle*, 933 F.3d at 716.

Notably, there is an objective and a subjective component to the above claim. *Jones*, 2 F.4th at 612 (quoting *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 764 (7th Cir. 2002));

*accord Lewis*, 864 F.3d at 562. To satisfy the objective component to the claim, a plaintiff may provide evidence that a physician diagnosed a medical condition as requiring treatment, a layperson would find the need for treatment to be obvious, or the failure to treat the condition resulted in a more serious injury or the unnecessary and wanton infliction of pain. *Jones*, 2 F.4th at 612 (quoting *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019)); *Eagan*, 987 F.3d at 695 (quoting *Gutierrez*, 111 F.3d at 1373); *Orlowski*, 872 F.3d at 423 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A condition may be obvious to a layperson even if he or she cannot diagnose or properly identify the cause of the observed ailment. *Jones*, 2 F.4th at 612 (quoting *Orlowski*, 872 F.3d at 423). Also, a medical condition need not be life-threatening to be serious. *Orlowski*, 872 F.3d at 423.

To satisfy the subjective component to the claim, a plaintiff must prove the prison medical professionals were aware of facts from which to infer a substantial risk of serious harm, drew such an inference, and responded with a reckless or intentional disregard for the serious medical condition through inaction or woefully inadequate action. *Jones*, 2 F.4th at 612; *Eagan*, 987 F.3d at 695; *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). That is, a plaintiff must prove "a sufficiently culpable state of mind," *i.e.*, that the prison medical professionals were "aware of a substantial risk of serious harm[] and effectively condone[d] th[at] harm by allowing it to happen." *Jones*, 2 F.4th at 612-13 (quoting *Estate of Simpson v. Gorbett*, 863 F.3d 740, 747 (7th Cir. 2017) (cleaned up); *Eagan*, 987 F.3d at 693).

The Court stresses deliberate indifference requires a state of mind more blameworthy than even gross negligence. *Jones*, 2 F.4th at 612-13 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *McGowan*, 612 F.3d at 640; *see also Eagan*, 987 F.3d at 688

5

("A physician's 'negligen[ce] in diagnosing or treating a medical condition does not state a valid claim…under the Eighth Amendment.' "). Indeed, the Seventh Circuit has found "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind." *Eagan*, 987 F.3d at 688 (quoting *Estelle*, 429 U.S. at 105-06) (cleaned up). Likewise, a mistake in professional judgment is not deliberate indifference. *Id.* (citing *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). As such, treatment decisions are entitled to deference unless no minimally competent professional would respond in the same way. *Campbell*, 936 F.3d at 545 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)); *accord Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011); *see also Orlowski*, 872 F.3d at 424 ("Even if a defendant recognizes the substantial risk, he is free from liability if he "responded reasonably to the risk, even if the harm ultimately was not averted.") (cleaned up). The treatment must be "such a substantial departure from accepted professional judgment, practice, or standards[] as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Campbell*, 936 F.3d 545 (quoting *Sain*, 512 F.3d at 895) (cleaned up); *see also Roe*, 631 F.3d at 857 ("The burden is high on a plaintiff making such a claim: Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts.' ") (cleaned up).

Relevantly, a "[r]efusal to treat chronic pain, delay in providing medical treatment, refusal to provide prescribed pain medication, or erroneous treatment based on a substantial departure from accepted medical judgment may evidence deliberate indifference." *Spencer v. Sheahan*, 158 F. Supp. 2d 837, 848 (N.D. Ill. 2001) (citing *Jones v.*

*Simek,* 193 F.3d 485, 490 (7th Cir. 1999); *Langston v. Peters,* 100 F.3d 1235, 1240 (7th Cir.

1996); *Ralston v. McGovern,* 167 F.3d 1160, 1162 (7th Cir. 1999); *Sherrod v. Lingle,* 223 F.3d

605, 611 (7th Cir. 2000)); *see also Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)

("Allegations of refusal to provide an inmate with prescribed medication…[can] state an

Eighth Amendment claim."); *but see Campbell*, 936 F.3d at 549 ("Deciding whether to

provide additional medical interventions—especially when the inmate's preferred course

of treatment poses considerable challenges to prison administration—is not the same as

deciding to provide no treatment at all."). Whether delay is tolerable depends upon the

seriousness of the condition, the prison official's awareness, and the ease of treatment.

*Jones*, 2 F.4th at 615 (quoting *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015));

*see also Lewis*, 864 F.3d at 563 ("A delay in treatment may show deliberate indifference if

it exacerbated the inmate's injury or unnecessarily prolonged his pain, and even brief,

unexplained delays in treatment may constitute deliberate indifference.") (cleaned up).

Defendants argue this case revolves around Plaintiff's "dismay" that they would

not acquiesce to a demand for his desired medication, Klonopin, which is "one of the

most addictive and habit-forming of the various benzodiazepines." (Docs. 187, pgs. 1, 4;

188, pgs. 1-3, 8, 10-11). Defendants stress that Klonopin is "a dangerous medication to

continue to provide on a long-term, indeterminate basis." (Docs. 187, pg. 1; 188, pgs. 1-2).

For that reason, on August 3, 2018, which was approximately 10 days after the lapse of

Plaintiff's Klonopin prescription, Defendant Cheng "saw Plaintiff and carefully and

thoughtfully prescribed him the Klonopin he sought…with a clear plan to taper it down[]

due to safety concerns regarding [the] long-term use of the drug." (Docs. 187, pgs. 3-4;

188, pgs. 3-4, 9). Defendants also emphasize Plaintiff's admissions that the prescription for Klonopin lapsed but was not discontinued by any doctor, he "kind of remembers" rejecting an alternative to Klonopin, he does not recall requesting an appointment with Defendants during the time that the short-term Klonopin prescription was lapsed, he was eventually provided Klonopin, through April 2019, on a tapering schedule, and no medical provider communicated that Defendants acted inappropriately or negligently. (Docs. 187, pgs. 2-3; 188, pgs. 2-6, 8-9). Defendants further emphasize, on October 25, 2018, Plaintiff was "satisfied with current prescribed psychotropic medications." (Docs. 187-1, pg. 5; 188, pg. 5). In short, Defendants argue "Plaintiff received numerous examinations and evaluations, was offered (but he refused) multiple alternative medications, and has no evidence of any detrimental delays in treatment" rising to the level of culpability required by the Eighth Amendment. (Docs. 187, pg. 5; 188, pgs. 2, 4-6, 8-9, 11-12).

In his Response, Plaintiff argues Defendants "mistakenly attempt to frame the issue as one where a prisoner is simply dissatisfied with not receiving his chosen mental health medication, being Klonopin." (Doc. 189, pgs. 2, 10). In Plaintiff's view, even in the absence of expert testimony, the evidence shows his medication was abruptly discontinued on July 22, 2018, without justification or consideration of his bi-polar disorder, posttraumatic stress disorder, depression, and anxiety. (Doc. 189, pgs. 2, 9-11). Indeed, Plaintiff notes Defendant Cheng agreed that his "Klonopin was not appropriately tapered in July of '18," there was "no basis for the abrupt stop of the Klonopin within the records that were forwarded to [her] as…his subsequent psychiatrist," and there was "no substitution of any medication for the Klonopin." (Doc. 189, pgs. 11-12; 189-7, pg. 17). As

a result of that "abrupt[] discontinu[ance]," Plaintiff was "unnecessarily subjected…to the severe withdrawal symptoms that defendants have admitted are known to occur following an abrupt cessation of long-term benzodiazepine use." (Doc. 189, pgs. 2, 10-12). Plaintiff also argues Defendants failed to provide treatment while he was experiencing those withdrawal symptoms. (Doc. 189, pgs. 2, 10). That is, despite the filing of at least five grievances that were subjected to "demonstrably false and unsupported findings," Defendants failed to renew the prescription for Klonopin until 10 to 12 days after the "abrupt[] discontinu[ance]." (Doc. 189, pgs. 2, 10-11, 14-15). And, even after the renewal at half of the prior dosage, Defendants failed to provide the Klonopin for an additional 8 to 10 days. (Doc. 189, pgs. 2, 10, 13). Therefore, at a minimum, Plaintiff argues there are genuine disputes of material fact that must be resolved by a jury. (Doc. 189, pgs. 12-15).

In their Reply, Defendants stress Plaintiff cannot avoid the legal conclusion that he suffered no constitutional deprivation. (Doc. 190, pg. 1). Defendants state: "many of the Defendants did not have their first encounter with [Plaintiff] until after the brief period during which he was not receiving Klonopin, or were never in (or placed by him in) a position to know or do anything for him during that period." (Doc. 190, pgs. 1, 13-15). To the extent any Defendant did encounter Plaintiff, Defendants argue their medical care did not constitute deliberate indifference. (Doc. 190, pg. 1). Defendants note there is "no evidence that any delay between July 22 and August 10, 2018…was caused by any" Defendant. (Doc. 190, pgs. 14-17). During that time, when Plaintiff was either without Klonopin or was awaiting his renewed prescription, Defendants state Plaintiff never "submitted any request…for medical care related to any withdrawal symptoms." (Doc.

190, pgs. 14-15). And, to the extent Plaintiff may have requested Klonopin during that timeframe, Defendants argue he did not present with or complain of withdrawal symptoms, which precluded medical professionals from prescribing it. (Doc. 190, pg. 15). Finally, although Plaintiff did submit grievances, Defendants argue "the record does not show any of those grievances went to any of the Defendants[] or that they were otherwise made aware of anything he may have written in th[e] grievances." (Doc. 190, pg. 15).

Here, the parties do not dispute that Plaintiff has an objectively serious medical condition. *See Jones*, 2 F.4th at 612; *Eagan*, 987 F.3d at 693-95; *Campbell*, 936 F.3d at 544-45; *Lisle*, 933 F.3d at 716. However, in view of the totality of Plaintiff's medical care, the Court concludes there is no genuine dispute of material fact as to whether Defendants were personally involved in causing the alleged constitutional deprivation or acted with deliberate indifference toward his health or safety. *See Jones*, 2 F.4th at 612-13, 615; *Eagan*, 987 F.3d at 688, 693-95; *Campbell*, 936 F.3d at 544-45, 549; *Lisle*, 933 F.3d at 716; *McGowan*, 612 F.3d at 640; *Roe*, 631 F.3d at 857; *Orlowski*, 872 F.3d at 424; *Spencer*, 158 F. Supp. 2d at 848; *Arnett*, 658 F.3d at 753; *Lewis*, 864 F.3d at 563; *see also Gonzalez v. McHenry County, Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (noting for personal involvement, as required against an individual, "the plaintiff must show that the relevant official 'caused the constitutional deprivation at issue' or acquiesced in some demonstrable way in the alleged constitutional violation.' "). Therefore, as explained below, the Court concludes Defendants are entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c)(1); *Driveline Sys., LLC*, 936 F.3d at 579; *Carroll*, 698 F.3d at 564; *Runkel*, 51 F.4th at 741.

Initially, Defendants are correct to note Defendant VanPelt saw Plaintiff on July 10, 2018, before the lapse of any Klonopin prescription. (Docs. 187-1, pg. 1; 187-3, pg. 54). Similarly, Defendants Walker and Tanner saw Plaintiff on October 25 and November 27, 2018, respectively. (Doc. 187-1, pgs. 30-37, 41-47). On the former date, Plaintiff "refuse[d] to entertain any other medication including meds that have never been tried." (Doc. 187-1, pg. 34). He reported being satisfied and somewhat satisfied, respectively, with his psychotropic medications on those dates. (Doc. 187-1, pgs. 30, 42). Those encounter dates were also after Defendant Cheng's renewal of Plaintiff's Klonopin prescription at a lower dose on August 3, 2018, and after Plaintiff received that prescription from the pharmacy on August 11, 2018. (Docs. 187-1, pgs. 2-8; 189-5; 190, pg. 13). Likewise, Defendants represent that Defendant "Huey first saw Plaintiff on May 13, 2019." (Doc. 190, pgs. 13-14). The summary judgment record is scant as to Defendant Huey; however, the Court notes that date is also after Defendant Cheng's renewal of Plaintiff's Klonopin prescription at a lower dose on August 3, 2018, and after Plaintiff actually received that prescription from the pharmacy on August 11, 2018. (Docs. 187-1, pgs. 2-8; 189-5; 190, pg. 13). Based on these facts, the Court concludes there is no genuine dispute of material fact as to whether Defendants VanPelt, Walker, Tanner, and Huey were personally involved in causing the alleged constitutional deprivation or acted with deliberate indifference toward Plaintiff's health or safety. Again, those Defendants appear to have seen Plaintiff outside of the timeframe forming the bases for his claim and, regardless, there is no evidence to suggest they were deliberately indifferent to the lapse of his Klonopin prescription, the renewal of the Klonopin prescription at a lower dosage, the treatment

11

of his withdrawal symptoms, or the delay in his actual receipt of Klonopin from the pharmacy. *See Gallo v. Sood*, 651 Fed. App'x 529, 533 (7th Cir. 2016) (Seventh Circuit finding as follows when affirming a grant of summary judgment under circumstances similar to those presented here: "[The plaintiff] apparently prefers to be treated with Asacol, but his prescription for this drug had lapsed two months before he first saw Dr. Sood, and he presented no evidence that instructions had been left by the prescribing doctor for [him] to be continued on this medication. This case thus is not one in which a doctor discontinued a medication prescribed by a specialist or disregarded a specialist's instructions."). Instead, to the extent they were personally involved in Plaintiff's medical care, the record reflects that they exercised reasonable medical judgment. *See Jones*, 2 F.4th at 612-13; *McGowan*, 612 F.3d at 640; *Eagan*, 987 F.3d at 688; *Campbell*, 936 F.3d at 545; *Roe*, 631 F.3d at 857; *Orlowski*, 872 F.3d at 424. For these reasons, the Motion for Summary Judgment is **GRANTED** as to Defendants VanPelt, Walker, Tanner, and Huey.

As to Defendant James, the Court similarly concludes there is no genuine dispute of material fact as to whether he was personally involved in causing the alleged constitutional deprivation or acted with deliberate indifference toward Plaintiff's health or safety. The only time Defendant James would have encountered Plaintiff was on May 18, 2018, which was before his Klonopin prescription lapsed without a taper on July 21, 2018. (Docs. 187-3, pgs. 50-53; 189-4, pg. 1; 189-9, pgs. 3-4). Also, that prescription was continued by a nondefendant doctor on May 27, 2018, with the annotation "(will not renew expires 7/21/18)." (Doc. 189-2, pg. 6). Other medications, *i.e.*, lithium and Zoloft, were continued for "x 90 days." (Doc. 189-2, pg. 6). From this timeline, the Court agrees

with Defendants that Defendant James, a physician assistant, was not in a position to be personally involved in the alleged constitutional deprivation. And, even if he were somehow responsible for tapering that prescription, as suggested by Plaintiff, despite its timing and the annotation of the nondefendant doctor, there is no evidence suggesting such a failure reflects deliberate indifference. *See Gallo*, 651 Fed. App'x at 534-35 (Seventh Circuit finding as follows when affirming a grant of summary judgment: "[Plaintiff] tries to cast [the defendant]'s actions as a failure to follow a specialist's instructions, [but] he later clarified that she did not discontinue a prescription for Asacol, but rather declined to re-prescribe it upon his request. None of these allegations, if true, would show a knowing disregard of a serious risk to his health."). Indeed, even assuming that failure would be indicative of negligence, gross negligence, or medical malpractice, that would not rise to the level of deliberate indifference. *See Jones*, 2 F.4th at 612-13; *McGowan*, 612 F.3d at 640; *Eagan*, 987 F.3d at 688; *Campbell*, 936 F.3d at 545; *Roe*, 631 F.3d at 857. As a result, the Motion for Summary Judgment is also **GRANTED** as to Defendant James.

With respect to Defendant Cheng, who encountered Plaintiff on August 3, 2018, the Court similarly concludes there is no genuine dispute of material fact as to whether she was deliberately indifferent to Plaintiff's health or safety. For example, on August 3, 2018, when Defendant Cheng encountered Plaintiff for a telepsychiatry visit, Plaintiff was "hostile," "irritab[le]," "terse," "impatient," closed in body posture, and inappropriate in affect. (Doc. 187-1, pgs. 3-4). However, he displayed "no evidence of delusions[] [or] paranoia," had unremarkable eye contact, and was appropriately groomed, alert, and oriented to time, place, person, and reality. (Doc. 187-1, pgs. 2-4). Plaintiff was also

13

appropriately focused and had unremarkable speech, clear and coherent thought

processes, and unremarkable thoughts. (Doc. 187-1, pg. 4). He was somewhat satisfied,

as opposed to not satisfied, with his psychotropic medications. (Doc. 187-1, pg. 2). In the

narrative portions of the medical records, Defendant Cheng noted:

> Patient is presenting for psychiatric follow up. He is very irritable and
> angry because "I feel like shit—they stopped my PTSD drug [further
> clarification is that he means Klonopin]." As a result he spends most of the
> interview arguing, yelling, calling various other treatment suggestions (like
> Minipress and Buspar) "garbage" and declining to learn more about them
> or take them. He was largely uncooperative with the interview,
> continuously bringing the conversation back to wanting Klonopin. Review
> of the last psychiatric note was that Klonopin was to run out mid-July; it
> was not renewed for unclear reasons (other medications were renewed). It
> does not appear to have been tapered. Attempts to educate the patient that
> long term use of benzodiazepines are harmful due to studies demonstrating
> disturbed sleep architecture, worsened depression, and impaired memory
> were unsuccessful as he continuously interrupted the conversation. When
> asked about SI or HI, he states, "You can't talk about stuff like that here."
> He refused to elaborate, refusing to participate in the rest of the interview.
> I spoke with the MHP about speaking with the patient after our
> appointment regarding his safety and that of others given his acute
> irritability and preoccupation with obtaining a benzodiazepine.

> * * *

> Offender description of his or her mood: "Like Shit"—he is focused on
> getting Klonopin, stating his mood is bad due to this medication being
> discontinued. Affect is angry.

> * * *

> As described in HPI, patient only answers "you can't talk about stuff like
> that here." Declines to answer further questions at this time. He is angry
> and irritable about his medication (Klonopin) being discontinued by the last
> psychiatrist. I do not have his initial psychiatric eval to better elucidate his
> history. Have spoken with MHP who agrees to speak with patient this
> afternoon.

> * * *

14

Pt is fixated on getting Klonopin, unable to engage in the interview and as
per HPI will not engage in discussion of suicide risk. At this time, his risk
is difficult to assess as I have limited history on the patient (I do not have
his initial psychiatric eval to better elucidate his history), and he will not
participate in interview. Have asked MHP to speak with patient regarding
the above statement "you can't talk about stuff like that here" given patient
not participating in full evaluation.

\* \* \*

Patient is presenting for psychiatric follow up. He is angry about his
Klonopin having been discontinued. While it's not immediately clear why
the prior psychiatrist did not taper him off (just had the dose expire), he
is acutely agitated and upset that it was discontinued and he's been off of it
for over 10 days. Unfortunately, he declined to participate beyond this in
the interview, instead yelling and angry that he had his Klonopin
discontinued, and unreceptive to education about the long term effects of
benzodiazepines (as described above) or other treatment options for his
anxiety. Will submit non formulary request for lower dose of Klonopin to
start slow taper over time given patient's dose was abruptly stopped. Will
continue Zoloft and Lithium at current doses. Have spoken with MHP who
will meet with patient given his vague answer and refusal to elaborate
when asked about thoughts to hurt himself or anyone else. He was clearly
angry and agitated at that moment and declined to speak with me further.

(Doc. 187-1, pgs. 2-8).

This record does not indicate Defendant Cheng acted according to anything other
than her reasonable medical judgment. *See Jones*, 2 F.4th at 612-13; *McGowan*, 612 F.3d at
640; *Eagan*, 987 F.3d at 688; *Campbell*, 936 F.3d at 545; *Roe*, 631 F.3d at 857; *Orlowski*, 872
F.3d at 424. Despite largely unremarkable findings in a mental status examination, and
Plaintiff's refusal to fully participate in the visit, she nevertheless decided to renew his
Klonopin prescription, at half the prior dosage, in light of the circumstances surrounding
its discontinuance and the need for a taper of that medication over time. (Doc. 187-1, pgs.
2-8). She also renewed other medications, as Plaintiff was somewhat satisfied with his

15

current prescribed psychotropic medication. (Doc. 187-1, pgs. 2-8). The order for a Klonopin taper, which was personally submitted to on-site staff by Defendant Cheng on August 3, 2018, was continued by Defendant Cheng on September 6 and 20, 2018. (Docs. 187-2, pgs. 16, 23; 189-7, pg. 13). It ended in April 2019. (Doc. 187-3, pg. 47). The record reflects that Defendant Cheng also suggested alternatives to Klonopin—*i.e.*, Minipress or Buspar—but Plaintiff "call[ed] [the] various other treatment suggestions…'garbage' and declin[ed] to learn more about them or take them." (Doc. 187-1, pg. 2). Certainly, nothing about Defendant Cheng's actions on August 3, 2018, or at Plaintiff's substantially similar visits with her at later dates, rise to deliberate indifference. *See Jones v. Stadtmueller*, No. 19-cv-106, 2024 WL 983361, *8 (W.D. Wisc. 2024) ("[The defendant] is entitled to considerable deference with respect to her decisions involving pain medications in an institutional setting, even when another doctor prescribed it."); (Doc. 187-1, pgs. 9-23). Therefore, the Motion for Summary Judgment is also **GRANTED** as to Defendant Cheng.

As a final matter, the Court addresses Plaintiff's arguments regarding the grievance process.[1] The Court already found he exhausted several grievances related to the claim in this case as a procedural matter; however, the grievance process, when viewed by itself or in the context of the broader record, is insufficient as a substantive matter to create a genuine dispute of material fact as to whether any named Defendant was personally involved in causing the alleged constitutional deprivation or acted with deliberate indifference toward his health or safety. *See Wagoner v. Lemmon*, 448 F.3d 586,

---

[1]Plaintiff only specifically invokes the grievances from July 22, July 23, July 24, July 25, July 26, and July 29, 2018, for purposes of these arguments. (Doc. 189, pgs. 2, 4-6, 10-12, 14-15).

591-92 (7th Cir. 2015) ("*Pavey's* central holding is that exhaustion is not a question for the jury at trial, but instead is a preliminary issue for the court. Summary judgment, in contrast, is designed to weed out cases that must go to a trier of fact from those that present no such issues. Separation of the exhaustion inquiry from summary judgment will thus promote clear decisionmaking."); *see also Jenkins v. Wills*, No. 24-cv-1488, 2025 WL 2409864, *2 (S.D. Ill. Aug. 20, 2025) (noting the Court's ability to conduct *Pavey* hearings for evidentiary disputes on exhaustion was altered slightly by *Perttu v. Richards*, 605 U.S. 460 (2025), which held a jury trial is necessary if a factual dispute on the issue of exhaustion is intertwined with a factual dispute that goes to the merits of the underlying substantive claim). In particular, neither the grievances nor the responses are sufficient to demonstrate any named Defendant was aware of Plaintiff's complaints or was positioned to act. As previously noted by the Court, "most of the grievances pre-date specific appointments with the providers." (Doc. 126, pg. 11). For example, Defendants Walker, Tanner, and perhaps Huey saw Plaintiff on October 25, 2018, November 27, 2018, and May 13, 2019, respectively, which was after the filing of each grievance referenced by Plaintiff. (Docs. 187-1, pgs. 30-37, 41-47; 190, pgs. 13-14).[2] Defendants James and VanPelt saw Plaintiff on May 18 and July 10, 2018, which was before each grievance but also before the lapse of his Klonopin prescription. (Docs. 187-1, pg. 1; 189-9, pgs. 3-4). Defendant Cheng saw Plaintiff on August 3, 2018, which was after all of the grievances

---

[2]A grievance from July 23 and 24, 2018, suggests Defendant Huey encountered Plaintiff at his cell at an earlier date. (Docs. 89-3, pg. 21; 126, pg. 3). Even if true, however, the claim against Defendant Huey fails for the other reasons discussed in this Memorandum & Order, namely, the absence of a genuine dispute of material fact as to her personal involvement and deliberate indifference.

referenced by Plaintiff. And, as to another grievance from August 6, 2018, it is notable Defendant Cheng emailed the new order for Klonopin, at half the original dosage, to on-site staff shortly after seeing Plaintiff on August 3, 2018. (Docs. 189-7, pg. 13; 190, pg. 12).

Further, despite levying grievances in the administrative process, which often takes time even on an emergency basis, Plaintiff admitted as follows when asked whether he submitted a sick call request during the period that he was without Klonopin: "I was trying to keep my mind straight. I don't remember if I put in [medical] requests or not. I may have, but I was in no condition to…really do much of anything." (Doc. 187-3, pg. 37). In other words, at around the same time that Plaintiff was able to submit grievances, he admits to not "remember[ing] if [he] put in [medical] requests or not." (Doc. 187-3, pg. 37). This is despite Plaintiff, on July 10, 2018, "report[ing] he [wa]s aware of how to request mental health services if needed before the next follow up." (Doc. 187-1, pg. 1). Similarly, in response to one grievance, a counselor observed: "Mental Health Kites were checked to see if the offender reported a need for Mental Health. There are no logged Kites in MH for July and August [2018]." (Doc. 89-3, pg. 19). As discussed above, when Plaintiff was seen by Defendant Cheng on and after August 3, 2018, the findings in his mental status examinations were largely unremarkable. (Doc. 187-1, pgs. 2-23). Those findings were also largely consistent with the subsequent findings of Defendants Walker and Tanner. (Doc. 187-1, pgs. 31-32, 43). Plaintiff was somewhat satisfied or satisfied, as opposed to not satisfied, with his psychotropic medications on August 3, September 6,

September 20, October 25, and November 27, 2018. (Docs. 187-1, pgs. 2, 10, 17, 30, 42). In short, Plaintiff's present arguments as to the grievance process cannot save his claim.[3]

### III. CONCLUSION

As explained above, Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk of the Court is **DIRECTED** to enter judgment and to close the case.

**SO ORDERED.**

Dated: September 8, 2025

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

---

[3]The Court notes that its reasoning in response to Plaintiff's grievance process argument would apply equally to other exhausted and unexhausted grievances, not specifically invoked by Plaintiff, from August 21, November 4, and November 10, 2018. Those grievances, like the other grievances, fail to create a genuine dispute of material fact as to whether any named Defendant was personally involved in causing the alleged constitutional deprivation or acted with deliberate indifference toward his health or safety.